1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

BULLION MONARCH MINING, INC.,

                                Plaintiff,

    v.

BARRICK GOLDSTRIKE MINES, INC.,

                             Defendant.

Case No. 3:09-CV-612-MMD-WGC
(Sub File of 3:08-CV-227-ECR-WGC)

ORDER

**TEMPORARILY SEALED**

(Defendant's Motion for Summary
Judgment – ECF Nos. 160 (sealed), 171;
Defendant's Renewed Motion for
Summary Judgment – ECF No. 161;
Plaintiff's Motion for Partial Summary
Judgment – ECF Nos. 164 (sealed), 169)

## I.    SUMMARY

The parties dispute the contractual obligation to make royalty payments on mining production generated from within an area of interest. Before the Court are the following motions: Defendant Barrick Goldstrike Mines, Inc.'s ("Barrick") Motion for Summary Judgment Based on Preclusion ("Preclusion Motion") (ECF Nos. 160 (sealed), 171) and Renewed Motion for Summary Judgment ("Merits Motion") (ECF No. 161); and Plaintiff Bullion Monarch Mining, Inc.'s ("Bullion") Motion for Partial Summary Judgment ("Bullion's Motion") (ECF Nos. 164 (sealed), 169).[1] The Court has reviewed the parties' respective responses (ECF Nos. 180, 184 (sealed), 185 (sealed), 189) and replies (ECF Nos. 200 (sealed), 203 (sealed), 205). The Court also heard argument on August 30, 2016. (ECF No. 222.) For the reasons discussed below, all three motions are denied.

---

[1]The parties filed sealed versions of their motions with leave of court. The Court will cite to the sealed version but will reference information in sealed documents in general terms to avoid sealing this Order. The pincite remains the same because the parties redacted text from the unsealed version.

1

2

**II.    BACKGROUND**

**A.    The 1979 Agreement**

This dispute arises from an agreement dated May 10, 1979 ("1979 Agreement" or "Agreement") between Bullion's predecessor-in-interest, Bullion Monarch Company, and six other companies including Universal Gas, Inc. and Universal Explorations, Ltd. (collectively, "Universal"). (ECF No. 170-1 at 2.) Bullion alleges that the 1979 Agreement gave Bullion the right to receive a royalty payment on future revenue from mining operations within the "Subject Property" and "Area of Interest" ("AOI") for a period of years. (ECF No. 18 at 2.) The Subject Property is located in Eureka County, Nevada, and has both "unpatented" and "patented" mining claims from particular mines on the property. (ECF No. 170-1 at 22.) The Area of Interest or AOI is identified as "those lands . . . approximately encompassing EIGHT (8) miles in a northerly direction, EIGHT (8) miles in a southerly direction, EIGHT (8) miles in an easterly direction and EIGHT (8) miles in a westerly direction" in a specified area located in Eureka and Elko Counties, Nevada (*id.* at 21) (caps in original). The AOI is the land surrounding the Subject Property.

In the 1979 Agreement, Universal was designated as the Operator of the Subject Property and was solely responsible for control over further development and production from the Subject Property. (ECF No. 170-1 at 6.) Paragraph 4 of the Agreement spelled out the calculation of royalty payments owed by Universal to Bullion on mineral production from the Subject Property. (*Id.* at 6-7.) As a complement to Paragraph 4, Paragraph 6 provided that once Bullion had received a set amount as required under the terms and conditions of Paragraph 4, Bullion was still owed a continuing percentage of royalty from production on the Subject Property. (*Id.* at 8.)

Paragraph 11 of the 1979 Agreement ("Paragraph 11" or the "AOI Provision") gave Universal the exclusive right to acquire additional mineral properties within the AOI. (*Id.* at 11-12.) The Agreement required Universal to offer to include the newly acquired property from the AOI into the Subject Property upon payment by two of the other parties

2

of a percentage of all acquisition costs. (*Id.* at 11.) If those parties accepted the offer and paid Universal their portion of the acquisition costs, the newly acquired AOI properties would become part of the Subject Property and thereafter be subject to the terms of the Agreement. (*See id.* at 12-13.) Alternatively, Paragraph 11 stated that if the other parties rejected the offer to acquire the property or failed to pay the acquisition costs, then "such properties within the Area of Interest shall not become part of the Subject Property as they apply to POLAR-CAMSELL and will remain the sole property of UNIVERSAL without any obligations to POLAR-CAMSELL, but subject to the royalty interest of Bullion" (*Id.* at 12) (caps in original). Paragraph 18 of the 1979 Agreement states that the terms and conditions of the Agreement are binding upon successors and assignees of the respective parties. (*See id.* at 15.)

## B.   Ownership History of the Subject Property

The ownership history of the Subject Property spans decades and implicates various joint ventures. As a result, the Court will focus on the relevant transactions as they relate to the current dispute and will base its summary of the chain of title for the Subject Property as it has been agreed upon between the parties. The summary is as follows: [2]

- March 1979: Polar, Camsell, Bullion
- June-September 1979: Universal
- May 1980: Polar (50%), Universal (50%)
- May 1984: NICOR (50%), Universal (50%)
- June 1984: NICOR (100%)
- April 1986: Westmont (NICOR), Petrol (Universal), Camsell, Eltel, Lambert, El Dorado
- Aug. 1990: High Desert

---

[2]Barrick submitted a binder of exhibits at the August 30, 2016 hearing. Tab 1 of the binder is a chart showing the relevant chain of title. Bullion does not dispute the content of the chart, a copy of which is attached to this Order.

- Dec. 1991: High Desert (40%), Newmont (60%)
- Dec. 1995: Barrick HD (40%), Newmont (60%)
- May 1999: Newmont

### C.    Procedural History

Bullion initially filed suit against Newmont USA Limited ("Newmont") in April 2008, alleging that Newmont, as the current majority owner and prior joint venture operator of the Subject Property, was liable for royalties from AOI properties that Newmont owned. (*See Bullion Monarch Mining, Inc. v. Newmont USA Limited*, No. 3:08-cv-00227-ECR-VPC ("Newmont Case"), ECF No. 1.) In June 2009, Bullion sought leave to file a First Amended Complaint ("FAC") to add Barrick as a co-defendant and to assert the same five claims against Barrick as it had against Newmont. (Newmont Case, ECF No. 48.) In the FAC, Bullion alleges that Barrick was the corporate successor to High Desert Mineral Resources ("High Desert"), who was the original co-owner of, and joint venture partner with Newmont in, the Subject Property.[3] (*Id.* at 4-5.) Subsequently, the claims against Barrick were severed by consent of all parties. (ECF No. 1.) The Court referred to the suit against Barrick as a "sub-case" of the Newmont Case. (*Id.*) The Court subsequently granted Newmont's motion for summary judgment, finding that Bullion had failed to timely and diligently pursue its claims against Newmont. (Newmont Case, ECF No. 306 (sealed).)[4]

In this case, Barrick initially filed a motion for summary judgment based upon the rule against perpetuities (ECF No. 43) and a motion for summary judgment based upon the merits (ECF No. 50). Bullion filed a cross-motion for summary judgment based upon the merits (ECF No. 53). This Court granted Barrick's motion based upon the rule against perpetuities and denied the other motions as moot. (ECF Nos. 115, 116.) Bullion

---

[3]For purposes of summary judgment, Barrick does not dispute that it is the successor-in-interest to High Desert. (*See* ECF No. 180 at 20.)

[4]This ruling is final because the Ninth Circuit affirmed the district court's decision and no further appeals were taken. *See Bullion Monarch Mining, Inc. v. Newmont USA Limited*, No. 10-17320 (9th Cir. June 13, 2012).

then appealed the judgment to the Ninth Circuit Court of Appeals. (ECF No. 118.) The Ninth Circuit certified two questions to the Nevada Supreme Court, including whether the rule against perpetuities applies to an area-of-interest provision in a mining agreement. (ECF No. 132 at 6.) The Nevada Supreme Court decided that the rule does not apply to an area-of-interest provision in a mining agreement. *Bullion Monarch Mining, Inc. v. Barrick Goldstrike Mines*, Inc. 345 P.3d 1040 (Nev. 2015). As a result of the Nevada Supreme Court's decision, the Ninth Circuit reversed this Court's judgment and remanded the case for further proceedings. (ECF No. 134.) Upon remand, the Court permitted the parties to renew their earlier merits motions and Barrick to file an additional motion for summary judgment based on preclusion. (ECF No. 145.)

III.    **LEGAL STANDARD**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most
///

5

favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

Further, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb. 1992) (citations omitted). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

///

///

///

1    **IV.    PRECLUSION MOTION**

2         Barrick argues that Bullion's claims are barred by either claim preclusion or issue

3    preclusion. The Court will address these threshold arguments before turning to the

4    merits motions.

5         **A.    Claim Preclusion**

6              **1.    Legal Standard**

7         A federal court sitting in diversity should follow the forum state's law of claim

8    preclusion when determining the preclusive effect of a prior dismissal upon the merits.

9    *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). This principle

10   holds regardless of whether the dismissal was ordered by a state court or by a federal

11   court. *Id.* Thus, Nevada's law on claim preclusion is the appropriate legal standard when

12   determining the claim preclusive effect of this Court's prior judgment in the Newmont

13   Case.

14        Nevada applies a three-part test when determining the preclusive effect of a

15   former judgment: (1) whether there has been a valid, final judgment in the previous

16   action; (2) whether the claims are identical or the subsequent claims could have been

17   brought in the first action; and (3) whether the parties or their privies are the same in the

18   instant lawsuit as they were in the previous lawsuit, or the defendant can demonstrate

19   that he should have been included in the earlier suit and the plaintiff fails to provide a

20   reason for not having done so. *Weddell v. Sharp*, 350 P.3d 80, 81 (Nev. 2015).

21              **2.    Application**

22        Claim preclusion is inapplicable to bar this action because this case is a sub-case

23   of the originally filed case, not a separate case for preclusion purposes. (Newmont Case,

24   ECF No. 48). Judge Reed severed the original case, brought by Bullion against both

25   Newmont and Barrick, by stipulation of the parties. (ECF No. 1.) At the time of

26   severance, Judge Reed also permitted discovery from the main case to be used in the

27   sub-case although Barrick was allowed to also conduct additional discovery. (*Id.* at 1.)

28   Moreover, the parties advised the Court that "a prompt ruling on dispositive motions filed

7

1    in the main case 03:08-cv-227, will assist in narrowing discovery in the sub-case, 03:09-

2    cv-612." (*Id.* at 2.) Thus, the Court and the parties at the time contemplated that this

3    case would be part of the main Newmont Case, not an entirely separate case.

4         One of the primary purposes underlying the doctrine of claim preclusion is to

5    prevent inconsistent results or repetitious litigation between jurisdictions. *See Taylor v.*

6    *Sturgell*, 553 U.S. 880, 891 (2008); *see also Montana v. U.S.*, 440 U.S. 147, 154 (1979).

7    Inconsistent results do not occur when defendants are severed in the same case for the

8    purpose of administrative efficiency *and* the same court decides both cases in a

9    consecutive manner. *See, e.g.*, *Digitech Image Technologies, LLC v. Agfaphoto Holding*

10   *GMBH*, No. 8:12-cv-1153, 2012 WL 4513805, at *4 (C.D. Cal. Oct. 1, 2012) (when

11   defendants are severed from one another in a single patent suit, claim preclusion is

12   inapplicable because, even though all defendants have allegedly infringed the same

13   patent, the factual bases for infringement are not the same across all defendants).

14        In this case, Bullion amended its complaint when it learned that Barrick may be a

15   responsible party with respect to the royalty under the AOI Provision. (Newmont Case,

16   ECF No. 48; ECF No. 185 at 3.) Bullion proceeded against Barrick on the ground that

17   Barrick was additionally liable for royalty payments and not liable in the alternative. (ECF

18   No. 185 at 2-3.) In its motion to sever, Bullion offered as reasons for severance that

19   claims against defendants may be separately maintained, that Newmont seeks to extend

20   the discovery deadline based on Barrick having been added, and that Bullion "deserves

21   to bring its claims against Newmont to trial as soon as possible." (Newmont Case, ECF

22   No. 89 at 3.) Barrick joined the request (Newmont Case, ECF No. 90) on the basis that it

23   would "best promote the efficient administration of justice" and because severance would

24   enable Barrick to conduct additional discovery (*see* Newmont Case, ECF No. 90 at 2.)

25   Furthermore, Barrick wished to formulate their own discovery plan and defense strategy

26   to eliminate any prejudice that may come from being tried with Newmont. (ECF No. 185

27   at 3-4.) Thus, the primary reasons for severing the two parties were to prevent delay in

28   ///

1   the trial against Newmont and enable Barrick to conduct any necessary additional
2   discovery.

3        Despite the clear procedural history that led to the designation of this case as a
4   "sub-case" of the Newmont Case, the parties appear to agree that this is a separate
5   case and that the claim preclusion doctrine may be invoked. They just disagree that the
6   factors for applying the doctrine are satisfied here. The Court disagrees and finds that
7   claim preclusion does not apply because this case is essentially a part of the Newmont
8   Case and was designated as a "sub-case" when Judge Reed granted the stipulation to
9   sever the claims against Barrick.

10        Even assuming, as the parties insist, that the claim preclusion doctrine may be
11   invoked under the circumstances of this case, the second and third factors required for
12   such application are not satisfied. *See Weddell v. Sharp*, 350 P.3d at 81. The second
13   factor provides that "all claims based on the same facts and alleged wrongful conduct
14   that were or could have been brought in the first proceeding" are subject to claim
15   preclusion. *Alcantara ex rel. Alcantara v. Wal-Mart Stores*, Inc., 321 P.3d 912, 915 (Nev.
16   2014) (quoting *G.C. Wallace v. Eighth Judicial Dist. Court of State, ex rel. County of*
17   *Clark*, 262 P.3d 1135, 1139 (Nev. 2011) (quotations omitted)).

18        Barrick argues that Bullion previously litigated and lost the same claims that it now
19   asserts in this case. (ECF No. 160 at 3.) According to Barrick, the claims are the same
20   because the wording of the complaints in both cases is essentially identical. (*Id.* at 12.)
21   Barrick's argument, while seemingly logical, ignores the pleading standard. To be sure,
22   the Complaint in this case is very similar in content and wording to the Complaint in the
23   Newmont Case. However, such similarity alone does not necessarily support a finding
24   that the claims against both parties are the same. Federal civil pleading *is* notice
25   pleading. *E.g., Starr v. Baca,* 652 F.3d 1202, 1212-16 (9th Cir. 2011). The complaint
26   does not need to include all factual bases for liability; rather, general notice of the basis
27   for liability suffices.
28   ///

Here, Bullion is pursuing its claims against Barrick based on additional, distinguishable facts and legal theories, which ultimately makes the claims different for purposes of claim preclusion. Bullion's claims against Barrick are premised on an additional theory of liability: that, in the alternative, if the "royalty interest" as stated in the AOI Provision does not run with the land, it is a personal covenant that Barrick, not Newmont, contractually assumed through the chain of title from Universal and that Barrick still has an obligation to pay. (ECF No. 169 at 1, 17-22.) This is based on an interpretation of the 1990 Option Agreement that High Desert expressly assumed the royalty obligations of the 1979 Agreement. (*See* ECF No. 162-17.) Therefore, Bullion argues that Barrick, as High Desert's successor, contractually assumed an obligation to pay the AOI royalty under the 1979 Agreement. (ECF No. 169 at 21.) Bullion is able to make this argument because of the different facts underlying its relationship with Barrick: Barrick owned a distinct share of the property for a different time period and thus was a party to different agreements. In contrast, Newmont attempted to disclaim an obligation for the AOI royalty in its agreement with High Desert. (*Id.*; *see also* ECF No. 162-27.) Thus, the Court agrees with Bullion that there are enough factual distinctions between the two cases that the requirement of identity of claims is not met.

Additionally, the final factor of claim preclusion is not present because the parties are not identical and Newmont is not Barrick's privy. Both the party asserting claim preclusion and the party against whom claim preclusion is asserted must have been "involved" in the prior case or in privity with a party involved in the prior case. *Five Star Capital Corp. v. Ruby,* 194 P.3d 709, 714 (Nev. 2008). A "privy" or one in "privity" with a party, is "one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." *Paradise Palms Community Ass'n v. Paradise Homes*, 505 P.2d 596, 599 (Nev. 1973). A privy has also been defined under Nevada law as one "who is directly interested in the subject matter, and had a right to make defense, or to control the proceeding, and to appeal from the judgment" in the related proceeding.

1   *Werbicky v. Green Tree Servicing, LLC*, No. 2:12-CV-01567-JAD-NJK, 2015 WL

2   1806857, at *3 (D. Nev. Apr. 21, 2015) (quoting *Paradise Palms*, 505 P.2d at 598).

3   Additionally, the Nevada Supreme Court has recently adopted § 41 of the Restatement

4   (Second) of Judgments to allow non-parties to prior litigation to benefit from a prior

5   judgment when the party in the original action was either vested by the non-party to

6   represent him or was a fiduciary manager of that non-party's interest. *See Alcantara ex*

7   *rel Alcantara v. Wal-Mart Stores, Inc.*, 321 P.3d 912, 917 (Nev. 2014). As this Court

8   recently observed, the Supreme Court in interpreting the Restatement (Second) of

9   Judgments held that "[a] party's representation of a nonparty is adequate for preclusion

10  purposes only if, at a minimum: (1) the interests of the nonparty and [its] representative

11  are aligned and (2) either the party understood [itself] to be acting in a representative

12  capacity or the original court took care to protect the interests of the nonparty." *Werbicky*

13  *v. Green Tree Servicing, LLC*, No. 2:12-cv-01567-JAD-NJK, 2015 WL 1806857, at *3 (D.

14  Nev. 2015) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 900 (2008)).

15      Under the first definition of "privity" requiring inheritance, succession, or purchase,

16  the history of the chain of title of the Subject Property demonstrates that Barrick's

17  predecessor High Desert was the sole owner of the Subject Property prior to the joint

18  venture with Newmont (ECF Nos. 165-3 (sealed), 165-7 (sealed)). At the time of the joint

19  venture, High Desert sold an interest in the Subject Property to Newmont (ECF No. 165-

20  10 (sealed)), and Barrick sold the remainder of its interest in the Subject Property to

21  Newmont (*see* ECF No. 162-34). Thus, Barrick did not have a successive interest in the

22  Subject Property; rather, Newmont did.

23      Under the second definition of privity, it is clear that Barrick could not have

24  controlled the Newmont Case once it was severed or appealed the judgment rendered in

25  favor of Newmont.

26      Finally, under the third definition of privity, Barrick fails to meet the requirements

27  set out by the Nevada Supreme Court that permit non-parties to take advantage of prior

28  judgments. Barrick argues that Newmont and Barrick are in privity with regard to

Bullion's claims because they owned the Subject Property as tenants in common and because Newmont, as Operator/Manager of the joint venture, was obligated to represent the joint venture in all matters relating to the 1979 Agreement. (ECF No. 160 at 8.) While as tenants in common Barrick and Newmont had some aligned interests, the records reflect that only Newmont clearly and explicitly attempted to disclaim an obligation to pay the AOI royalty. (*See* ECF No. 162-27.) The joint venture agreement between High Desert and Newmont states that "Newmont shall not . . . assume any obligations to Bullion Monarch Company, other than the obligation, if applicable, to pay to [Bullion] the production royalty described in [Paragraph] 4." (*Id.* at 18-19.) By contrast, Barrick's predecessor, High Desert, expressly assumed the 1979 Agreement by contract. (ECF 162-17 at 2, 30.) Furthermore, although Newmont may have been the manager and contact person during the joint venture with High Desert/Barrick, Newmont never agreed to represent Barrick in legal actions. To the contrary, both parties agreed to indemnify one another for future lawsuits relating to claims made by Bullion for production royalties arising from the 1979 Agreement. (ECF No. 162-34 at 20-21.) Neither party appears to have taken responsibility for defending both parties in any future legal proceedings brought by Bullion.

For the reasons stated above, the Court finds that claim preclusion does not apply.

### B.    Issue Preclusion

#### 1.    Legal Standard

Similarly, a federal district court sitting in diversity should follow the forum state's law regarding issue preclusion. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). Under Nevada law, issue preclusion requires that (1) the issue decided in the prior litigation is identical to the issue presented in the current action, (2) the initial ruling must have been on the merits and final, (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation, and (4) ///

1    the issue was actually and necessarily litigated. *Five Star Capital Corp. v. Ruby,* 194

2    P.3d 709, 713 (Nev. 2008).

3                    **2.    Application**

4          The Court's finding that this case is a sub-case of the Newmont Case equally

5    applies to prevent consideration of issue preclusion. Assuming again that issue

6    preclusion may be invoked, Barrick cannot establish the first and third factors. The third

7    factor — privity — is the same as the third factor under the claim preclusion doctrine and

8    the Court's finding of a lack of privity equally applies to bar issue preclusion. Moreover,

9    the first factor is also not satisfied.

10         Barrick contends that the two issues are identical because Bullion's allegations

11   against Barrick are nearly identical to those against Newmont and are based on both

12   Bullion and Newmont obtaining an interest in the Subject Property with knowledge of the

13   1979 Agreement. (ECF No. 160 at 7, 10.) Further, because Bullion is asserting that

14   Newmont and Barrick are jointly and severally liable under the AOI Provision, Barrick

15   argues that the issue is the same between the two cases. (*Id.*) This argument similarly

16   overlooks the difference between how the two parties came to acquire an interest in the

17   Subject Property.

18         In the Newmont Case, the Court decided whether Bullion should have raised the

19   issue of Newmont's potential royalty obligations under the AOI Provision before Bullion's

20   filing of the 2007 litigation. That issue was predicated upon Newmont's acquisition of a

21   majority interest in and control of the Subject Property in 1991, which it acquired by

22   entering into a joint venture with High Desert. (*See* ECF No. 162-27.) Barrick, however,

23   has a different position from Newmont in the chain of title. While Barrick admits that it is

24   a successor to High Desert (*see* ECF No. 180 at 20), Barrick merged with High Desert in

25   1995 in a triangle merger[5] and retained a minority interest in the Subject Property from

26         [5]Specifically, Barrick Gold Corporation acted as the Parent company, while HD
27   Acquisition Corporation acquired High Desert and merged with it. HD and High Desert
     then became the surviving corporation, Barrick HD, while Barrick Gold remained the
     parent company. Barrick Goldstrike Mines then merged with Barrick HD. (ECF Nos. 162-
28   31, 162-33.)

1   1995 to 1999. (ECF No. 162-31.) Newmont, on the other hand, entered a joint venture

2   with High Desert where it acquired a 60% ownership in the Subject Property. Barrick's

3   relationship with High Desert is different than Newmont's relationship to High Desert.

4   While Bullion may have been on notice of High Desert's ownership and of Barrick Gold

5   Corporation's purchase of the 40% interest in the Subject Property from High Desert

6   (ECF Nos. 201-1, 201-2, 201-3, 201-4), there is no evidence that Bullion was aware that

7   Barrick Gold Corporation may have assumed the AOI Provision before the initiation of

8   the lawsuit against Newmont in 2007 (ECF No. 185 at 3). By contrast, based on the

9   evidence presented in the Newmont Case, Bullion was on notice that Newmont may

10  have assumed the AOI Provision well back into the 1990s and that there was an issue

11  with Newmont paying royalties on properties located within the AOI.

12       Bullion's potential lack of knowledge of Barrick's potential assumption of the

13  royalty obligations under the AOI Provision is not immaterial to the preclusion analysis.

14  For this reason, Judge Reed's order finding that Bullion had slept on its rights with

15  respect to Newmont is not the same issue. Thus, the first prong of issue preclusion is not

16  met.

17       In sum, the Court finds that issue preclusion does not apply.

18  **V.   MERITS MOTION AND BULLION'S MOTION**

19       In their merits motions, the parties raise the issue of whether the royalty obligation

20  under the AOI Provision "runs with the land" or whether the obligation is personal to

21  Universal and thus requires an express contractual assumption by Universal's

22  successors. (ECF Nos. 161 & 164.) Barrick argues that the AOI Provision is not a

23  covenant that runs with the land and is merely a personal obligation of Universal. (ECF

24  No. 161 at 27.) By contrast, Bullion argues that the AOI Provision is a covenant that runs

25  with the land and that even if it is a personal obligation, Barrick and its predecessors

26  contractually assumed the royalty obligation under the AOI Provision. (ECF No. 164.)

27  The Court does not need to address the issue of whether the AOI Provision runs with the

28  land, as it finds that Paragraph 11 of the 1979 Agreement is ambiguous with respect to

the content of the royalty obligation. Therefore, whether the language of the contract as a whole created a covenant that ran with the land, a personal covenant, or no covenant at all are issues that must be deferred to the trier of fact to resolve.

Construction of a contract and its terms is a question of law. *Anvui, LLC v. G.L. Dragon, LLC*, 163 P.3d 405, 407 (Nev. 2007). A contract is considered to be "ambiguous" when it is subject to more than one reasonable interpretation. *Id.* If a court determines that a contract is ambiguous, then a trial will be required to resolve the ambiguity. *See Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 366 (Nev. 2013).

Paragraph 11 of the Agreement sets out Universal's exclusive right to acquire additional property. If the two specified parties choose not to pay the acquisition costs for the additional property, then Paragraph 11 states that "such [additional] properties [acquired] within the Area of Interest shall not become part of the Subject Property as they apply to POLAR-CAMSELL and will remain the sole property of UNIVERSAL without any obligations to POLAR-CAMSELL, but subject to the royalty interest of BULLION" (ECF No. 170-1 at 12) (caps in original). The phrase, "subject to the royalty interest of Bullion" is ambiguous because the content of the royalty obligation from AOI properties is not defined in Paragraph 11 or anywhere else in the Agreement.

Bullion argues that "royalty interest of Bullion" is defined by the parameters in Paragraph 4 of the Agreement. (*See* ECF No. 164 at 3-4.) More specifically, Bullion believes that Paragraph 4 of the Agreement requires Barrick to pay them a certain percentage of "gross smelter return"[6] royalty from revenue on the relevant properties that Barrick owns in the AOI. (*See* ECF No. 164 at 2, 3-4.) Bullion is correct that Paragraph 4 of the Agreement spells out required royalty payments to Bullion. However, each sub-section of the paragraph applies the royalty obligations to production from the Subject
///

---

[6]The 1979 Agreement defines "gross smelter return" as the "amount of earned revenues, as used in accordance with generally accepted accounting principles, payable to UNIVERSAL by any smelter or other purchaser of metals, ores, minerals or mineral substances, or concentrates produced therefrom for products mined from the Subject Property" (ECF No. 170-1 at 7) (caps in original).

1  Property.[7] (*See* ECF No. 170-1 at 6-7.) Nowhere in Paragraph 4 is the term "royalty
2  interest of Bullion" used with respect to production from additional properties not
3  included in the Subject Property. (*See id.*) Additionally, Paragraph 11 does not explicitly
4  refer back to Paragraph 4 to apply the payment structure outlined there to royalty
5  payments on additional properties acquired under the framework stated in Paragraph 11.
6  As a result, it is unclear what royalty interest may be owed on production from AOI
7  properties.

8        Because of this ambiguity, the Court cannot resolve the arguments presented on
9  summary judgment. Specifically, the Court cannot determine whether the AOI Provision
10  runs with the land or whether it is a personal obligation that must be contractually
11  assumed. For this reasons, the Merits Motion and Bullion's Motion are denied.

12  **VI.   CONCLUSION**

13        The Court notes that the parties made several arguments and cited to several
14  cases not discussed above. The Court has reviewed these arguments and cases and
15  determines that they do not warrant discussion as they do not affect the outcome of the
16  parties' motions.

17        It is therefore ordered that Defendant Barrick's Motion for Summary Judgment
18  Based on Preclusion (ECF Nos. 160 (sealed), 171) and Renewed Motion for Summary
19  Judgment (ECF No. 161) are denied.

20        It is therefore ordered that Plaintiff Bullion's Motion for Partial Summary Judgment
21  (ECF Nos. 164 (sealed), 169) is denied.

22        DATED THIS 30th day of September 2016.

23

24  _____

25  MIRANDA M. DU
    UNITED STATES DISTRICT JUDGE

26        [7]For example, sub-section (A) states that "UNIVERSAL shall pay to BULLION an
27  advance minimum royalty of $2,500.00 each and every month through October of 1979
    or until gross production sales *from the Subject Property* have reached the amount of
    $62,500.00 per month, whichever comes first" (ECF No. 170-1 at 6) (caps in original)
28  (emphasis added).



## Chain of Title

## Joint Ventures

**March 1979** — Polar | Camsell | Bullion

**May 1979** — 1979 Joint Venture (Universal, Polar, Camsell, Eltel, Lambert, Bullion)

**June - Sept. 1979** — Universal

**May 1980** — Polar (50%)

**May 1984** — NICOR (50%)   50%

**June 1984** — 1984 Little Don Venture (NICOR, Petrol [Universal], Camsell, Eltel, Lambert)

NICOR (100%)

**April 1986** — 1986 Joint Venture (NICOR, Petrol [Universal], Camsell, Eltel, Lambert, El Dorado)

Westmont [NICOR], Petrol [Universal], Camsell, Eltel, Lambert, El Dorado

**Aug. 1990** — High Desert

**Dec. 1991** — Newmont 60%   Newmont - High Desert J.V.

**Dec. 1995** — Barrick 40%

**May 1999** — Newmont 100%