UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BULLION MONARCH MINING, INC., | Case No. 3:09-cv-00612-MMD-WGC |
| Plaintiff, | |
| v. | ORDER |
| BARRICK GOLDSTRIKE MINES, INC., | |
| Defendant. | |

## I.   SUMMARY

Plaintiff Bullion Monarch Mining, Inc. sued Defendant Barrick Goldstrike Mines, Inc. in an attempt to recover royalties on the proceeds of a gold mine. (ECF No. 2.) Some eight years later, Defendant has moved to dismiss for lack of subject matter jurisdiction (the "Motion"), specifically arguing the parties were not diverse at the time this case was split from a related case.[1] (ECF No. 281.) Because the Court agrees with Defendant that its nerve center was located in Salt Lake City, Utah, in June 2009, the Court will grant Defendant's Motion. The Court will also grant Plaintiff's related motions to seal.[2] (ECF Nos. 283, 284, 292.)

---

[1] The Court also reviewed Plaintiff's response (ECF No. 285), and Defendant's reply (ECF No. 297), along with the corresponding appendices and exhibits.

[2] While there is a "strong presumption" in favor of access, and a party seeking to seal judicial materials must identify "compelling reasons" that outweigh the "public interest in understanding the public process," *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178–1180 (9th Cir. 2006), there may be compelling reasons to seal "business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). Here, compelling reasons exist. Specifically, Plaintiff has moved to selectively seal references to, and exhibits describing, Defendant's confidential business information. (ECF Nos. 283, 284, 292.) This information may harm Defendant's competitive standing if revealed. Thus, Plaintiff's motions are granted. Plaintiff will file redacted versions of the applicable documents within fifteen days.

## II. BACKGROUND

The Court refers to its prior order in which it described the facts of this case. (ECF No. 224 at 2-5.) It will not restate those facts here because they are largely irrelevant to Defendant's Motion. As relevant here, Defendant represents that it moved to dismiss for lack of jurisdiction after Defendant became aware of the potential jurisdictional defect in this case, while preparing a proposed joint pretrial order that called for a jurisdictional statement. (ECF No. 281 at 3.) On Plaintiff's motion, Judge Cobb ordered jurisdictional discovery and denied Defendant's motion to dismiss without prejudice. (ECF Nos. 263, 267.) Upon the completion of jurisdictional discovery, and in line with a briefing schedule set by Judge Cobb, Defendant filed its a renewed motion to dismiss for lack of jurisdiction. (ECF No. 281.)

Plaintiff and Defendant agree on many of the threshold questions applicable here. Plaintiff initially filed suit against a third party, and added Defendant as a party to that suit in the spring of 2009. (ECF No. 281 at 4.) Per the parties' agreement, the case between Plaintiff and Defendant was severed from the original case in October 2009, and has been proceeding as a separate case ever since. (*Id.*) Plaintiff alleged, and continues to allege, this Court has diversity jurisdiction over the parties. (*Id.*) The parties agree that the relevant point in time for the jurisdictional inquiry is June 2009, when Plaintiff filed its amended complaint in the original case adding Defendant as a party. (ECF Nos. 281 at 11-12, 285 at 6 n.1.)

The question before the Court is whether Defendant's principal place of business was in Nevada (or Toronto) or Utah in June 2009. The parties agree that Plaintiff is a citizen of Utah, which is both its state of incorporation and the location of its principal place of business. (ECF No. 281 at 4, 5; *see also* ECF No. 2 at 1.) The parties also agree that Defendant is a Colorado corporation. (ECF No. 281 at 4; *see also* ECF No. 2 at 2.) The amount in controversy requirement is satisfied and not in dispute. But the parties disagree as to Defendant's principal place of business in June 2009. If, as Defendant argues, its principal place of business at the time was in Utah, the parties are

not diverse, and this Court has no jurisdiction over this case. (ECF No. 281 at 3-4.) But if, as Plaintiff argues, Defendant's principal place of business in June 2009 was in either Nevada or Toronto, Canada, the parties are diverse, and this Court may continue to exercise diversity jurisdiction over this case. (ECF No. 285 at 1-2.)

**III.  LEGAL STANDARD**

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction. Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving that the case is properly in federal court. *See McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). Plaintiff's burden is subject to a preponderance of the evidence standard. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Federal courts are courts of limited jurisdiction. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *See Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). "Because subject matter jurisdiction goes to the power of the court to hear a case, it is a threshold issue and may be raised at any time and by any party." *Mallard Auto. Grp., Ltd. v. United States*, 343 F. Supp. 2d 949, 952 (D. Nev. 2004) (citing Fed. R. Civ. P. 12(b)(1)).

Here, Defendant brings a factual attack on the Court's alleged diversity jurisdiction. In a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *See Safe Air for Everyone v. Myer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Once a moving party has converted a motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction. *See*

*Savage v. Glendale Union High School*, 343 F.3d 1036, 1039 n. 2 (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)); *see also Trentacosta v Front. Pac. Aircraft Indus.*, 813 F.2d 1553, 1559 (9th Cir. 1987) (stating that on a factually attacked 12(b)(1) motion to dismiss, the nonmoving party's burden is that of Rule 56(e)).

## IV. DISCUSSION

For the reasons explained below, the Court finds that Plaintiff has not met its burden to establish the Court's subject matter jurisdiction over this case. In contrast, the Court is persuaded by Defendant's argument—supported by the evidence before the Court—that its principal place of business was Salt Lake City, Utah in June 2009. Thus, the Court must dismiss Plaintiff's claims against Defendant without prejudice.

The parties and the Court agree that *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), governs the Court's analysis here. In *Hertz*, the Supreme Court clarified that a corporation's principal place of business, for diversity jurisdiction purposes, is its "nerve center." *Id.* at 92-93. A corporation can have only one nerve center—it is a single place within a single state. *Id.* at 93. A corporation's nerve center is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 92-93. "And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id.* at 93. The party asserting federal jurisdiction—here, Plaintiff—must present "competent proof" to substantiate its jurisdictional allegations. *See id.* at 96-97.

Defendant argues that its nerve center was located in Salt Lake City, Utah in June 2009. (ECF No. 281.) Plaintiff counters that Defendant's nerve center was located either in Nevada or Toronto, Canada in June 2009. (ECF No. 285.) As mentioned, the Court agrees with Defendant.

1    Defendant proffered unrebutted evidence that the majority of its corporate officers and executives lived and worked out of offices leased by Defendant's corporate parent in Salt Lake City in 2009. The Court finds this evidence persuasive in finding that Defendant's nerve center was in Salt Lake City at the time. First, five out of ten of Defendant's officers—including its President and CEO Greg Lang ("Lang"), Vice President Mike Feehan, and CFO Blake Meason—lived and worked out of Salt Lake City at the time. (ECF Nos. 281 at 13, 281-7 at 8-9, 297 at 2.) Second, four out of six of the members of Defendant's board of directors lived and worked in Salt Lake City at the time. (ECF No. 281-7 at 6.) Third, eight out of ten of Lang's direct reports lived and worked in Salt Lake City at the time. (*Id.* at 9-10.) Fourth, all of Defendant's witnesses deposed during jurisdictional discovery—including some of Defendant's corporate officers—offered unrebutted testimony that Defendant's corporate headquarters were in Salt Lake City at the time.[3] (ECF No. 297 at 7.)

Plaintiff responds with the creative but ultimately unpersuasive argument that the Court should ignore the location of Defendant's corporate officers and instead look at the location of Defendant's *de facto* executives. (ECF No. 285 at 5-8.) Defendant's main business is the operation of a gold mine outside of Elko, Nevada. Thus, Plaintiff argues the Court should primarily look at that mine's general manager's location and find that his location—in Nevada—was Defendant's nerve center. (*Id.*) The mine's general manger oversaw nine direct reports who were also based in Nevada, and was ultimately responsible for the 1600 employees and 400-500 independent contractors that worked in and around the mine. (ECF Nos. 285 at 2, 6-7, 281-7 at 10-12, 15.) The mine's general manager also, understandably, ran the mine from Nevada—he made decisions about

---

[3]Defendant did not properly authenticate the six deposition transcripts it attached as exhibits to its Motion. (ECF Nos. 281-1, 281-2, 281-3, 281-4, 281-5, 281-6.) Nonetheless, the Court will consider them because Plaintiff attached properly authenticated versions of the same transcripts to its response (ECF Nos. 289-7, 286-1, 289-3, 286-8, 286-10, 286-9), both parties cite to them, and neither party contests the authenticity of the transcripts. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 776 (9th Cir. 2002).

how to operate the mine, issued Requests for Proposals to subcontractors, conducted equipment inventories, held meetings, hired and fired people, and served as a point of contact for state and local officials. (ECF No. 285 at 5-8.)

But the mine's general manager at the time testified at his deposition that he reported to executives in Salt Lake City. (ECF No. 297 at 4-5.) He had to give weekly reports to executives in Salt Lake City on the mine's progress, they had to approve the budgets he presented, and they also had to approve higher-level hires the general manager wanted to make. (*Id.* at 5.) Executives in Salt Lake City also set human resources policies, and mine-related policies such as production targets and life-of-mine plans. (*Id.*) Thus, the mine's general manger is better characterized as part of Defendant's nervous system than as its sole nerve center.[4]

Further, Plaintiff's *de facto* executive argument conflicts with the Court's reading of *Hertz*. The *Hertz* Court provided a hypothetical intended to clarify the application of the nerve center test this Court finds analogous to these facts. "For example, if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York." *Hertz*, 559 U.S. at 96. Here, Utah is New York, while Nevada is New Jersey. While it does appear that the bulk of Defendant's business activities were in Nevada, Defendant's top officers were directing those activities just across the state border in Utah. Thus, Defendant's nerve center was in Salt Lake City. *See id.*; *see also Dawson v. Richmond Am. Homes of Nevada, Inc.*, Case No. 2:12-cv-01563-MMD, 2013 WL 1405338, at *2 (D. Nev. Apr. 5, 2013) (finding that nerve center was located where

---

[4]Plaintiff also argues that a contracts administrator named Tony Astorga was a *de facto* corporate officer relevant to this analysis, but the Court disagrees. (ECF No. 285 at 6-8.) Instead, the Court agrees with Defendant that Mr. Astorga was part of an administrative supply chain team that reported into executives in Salt Lake City. (ECF No 297 at 5-6.) Indeed, the entire shared services center where Mr. Astorga worked, consisting of various administrative personnel and located in Elko, Nevada, appears to have reported into Salt Lake City. (*Id.*) And while Mr. Astorga negotiated contracts on Defendant's behalf, he used forms provided by Salt Lake City and was confined both in terms of his signing authority and his discretion in negotiating contract terms. (*Id.*).

6

1  the majority of Defendant's corporate officers worked and set direction even though Defendant's president managed day-to-day operations from a different state); *Corral v. Homeeq Servicing Corp.*, Case No. 2:10-cv-00465, 2010 WL 3927660, at *3-4 (D. Nev. Oct. 6, 2010) ("Absent such high-level officers directing the corporation from Nevada, Defendant cannot be deemed to have its principal place of business here.").

The Court is also unpersuaded by several of Plaintiff's subsidiary arguments that Defendant's nerve center was located in Nevada in June 2009. Plaintiff argues that Defendant's nerve center could not have been in Utah because it did not register to do business in Utah in 2009, or any other year. (ECF No. 285 at 2, 14-15.) But this lack of registration in Utah is not determinative here. *See Thunder Properties, Inc. v. Wood*, Case No. 3:14-cv-00068-RCJ-WGC, 2017 WL 777183, at *2 (D. Nev. Feb. 28, 2017); *Pound for Pound Promotions, Inc. v. Golden Boy Promotions, Inc.*, Case No. 2:16-cv-01872-GMN-PAL, 2017 WL 1157853, at *2 (D. Nev. Mar. 28, 2017). Plaintiff also argues that Defendant's nerve center was in Nevada because Defendant listed its office and/or mine addresses on various tax documents, filings with Nevada state agencies, and contracts. (ECF No. 285 at 5.) But the stated location of a business on contracts and required filings does not dictate the location of that business' nerve center. *See Hertz*, 559 U.S. at 97.

In addition, Plaintiff argues that the Court should not consider Defendant's corporate officers in Salt Lake City because they were employed by Defendant's corporate parent, and held similar executive roles with a number of other subsidiaries owned by Defendant's ultimate corporate parent. (ECF No. 285.) But corporate officers can hold executive roles at multiple related subsidiaries without changing the result of this jurisdictional inquiry. *See Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 106-7 (4th Cir. 2011). And given the evidence presented by Defendant tending to show that its Salt Lake City-based executives oversaw Defendant's operations in Nevada, and the undisputed evidence that the Salt Lake City-based executives were formally listed as Defendant's corporate officers, the Court declines to

1 exclude consideration of them in this jurisdictional analysis. (ECF Nos. 281 at 14-15, 281-7 at 8-9, 281-8, 297 at 2, 4, 6-7.)

Finally, Plaintiff argues in the alternative that Defendant's nerve center was Toronto, Canada—the headquarters of Defendant's ultimate corporate parent. (ECF No. 285 at 12-14.) However, Defendant's unrebutted evidence tends to show that executives in Salt Lake City—not Toronto—directed and controlled Defendant's activities. (ECF Nos. 281-2 at 10-12, 281-3 at 4-5, 281-6 at 10-11.) Plaintiff also contends that a 2009 shareholder's resolution lists a Canadian address and was signed by a Canadian member of Defendant's board of directors, which show that Defendant was controlled by a nerve center in Toronto. (ECF No. 285 at 9.) However, again, the address written on an official form is not necessarily relevant to this analysis. *See Hertz*, 559 U.S. at 97. Further, while it is true that some members of Defendant's board were located in Toronto, the majority were located in Salt Lake City. (ECF No. 281-7 at 6.) Thus, given the evidence before the Court, Toronto was not Defendant's nerve center in June 2009.

In sum, the Court agrees with Defendant that its principal place of business in June 2009 was Salt Lake City, Utah, which renders it a citizen of Utah for purposes of diversity jurisdiction. Because Plaintiff was also a citizen of Utah at the time, the parties are not diverse.

**V.     CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Defendant's Motion.

It is therefore ordered that Defendant's motion to dismiss (ECF No. 281) is granted. Plaintiff's claims are dismissed without prejudice.

It is further ordered that Plaintiff's motions to seal (ECF Nos. 283, 284, 292) are granted. Plaintiff will file redacted versions of the applicable documents, as Plaintiff stated in the motions to seal, within fifteen days from the date of the entry of this order.

The Clerk of the Court is directed to enter judgment in accordance with this order and close this case.

DATED THIS 1st day of November 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE